UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rushinga Muzaliwa, et al.,

                              Petitioners,                    Court File No. 16-cv-941 (DSD/LIB)

    v.

                                                   **REPORT AND RECOMMENDATION**

Joel Brott, et al.,

                            Respondents.

      This matter comes before the undersigned United States Magistrate Judge upon Petitioner Rushinga Francois Muzaliwa and Petitioner Hienok Mengisteab Zere's (collectively, "the Petitioners") Amended Petition for a Writ of Habeas Corpus, [Docket No. 25]; Motion for Certification of Classes, [Docket No. 3]; and Amended Motion for Certification of Classes, [Docket No. 27]. This case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  The Court has authority to consider the Amended Petition for a Writ of Habeas Corpus, [Docket No. 25], pursuant to 28 U.S.C. § 2241.

      For reasons discussed herein, the undersigned recommends that the Petitioners' Motion for Certification of Classes, [Docket No. 3], the Amended Motion for Certification of Classes, [Docket No. 27], be **DENIED**. The undersigned also recommends that the Amended Petition for Writ of Habeas Corpus, [Docket No. 25], be **DENIED as moot** as to Petitioner Muzaliwa and **DENIED** as to Petitioner Zere**.**

## I.    BACKGROUND AND STATEMENT OF FACTS

Petitioner Rushinga Francois Muzaliwa ("Muzaliwa") is a native and a citizen of the Democratic Republic of Congo. (Amended Petition, [Docket No. 25], 3). On February 17, 2010, Muzaliwa was admitted to the United States as a refugee and, on October 3, 2011, he became a lawful permanent resident of the United States of America. (Id. at 6; Declaration of Jonathan E. Ross, [Docket No. 36], 1-2).

On May 21, 2013, Muzaliwa was convicted of Domestic Violence, in violation of Mich. Comp. Laws § 750.80; and of Third Degree Child Abuse, in violation of Mich. Comp. Laws § 750.136b, Subd. 5. (Amended Petition, [Docket No. 25], 6).

On August 26, 2015, U.S. Immigration and Customs Enforcement ("ICE") charged Muzaliwa with removability pursuant to 8 U.S.C. § 1227(a)(2)(E)(i), for conviction of crimes involving domestic violence, and pursuant to 8 U.S.C. § 1227(a)(2)(A)(i), for conviction of crimes involving moral turpitude, and issued Muzaliwa a Notice to Appear. (Ross Declaration, [Docket No. 36], 2). ICE detained Muzaliwa pending a hearing on his removal. (Declaration of Rushinga Muzaliwa, [Docket No. 13-1], at 8).

On January 14, 2016, an Immigration Judge ("IJ") concluded that Muzaliwa is removable, and he ordered Muzaliwa removed to the Democratic Republic of Congo. (January 14, 2016, IJ Order, [Docket No. 5-1], 2).  The IJ denied Muzaliwa's applications for asylum and for withholding of removal. (Id.).  However, the IJ granted Muzaliwa deferral of removal to the Democratic Republic of Congo under Article III of the United Nations Convention Against Torture. (Id.).

Muzaliwa and ICE waived any appeal of the IJ's Order.  (Id.) As such, pursuant to 8 C.F.R. § 1003.39, the IJ's January 14, 2016, Order is administratively final.

2

In pertinent part, 8 U.S.C. § 1231(a)(1)(A) sets forth that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" Pursuant to 8 U.S.C. § 1231(a)(2), the Attorney General is required to detain aliens who have been ordered removed during the ninety (90) day removal period.

After the IJ issued the January 14, 2016, Order, Muzaliwa was placed in post-removal order detention at the Sherburne County Jail while the Office of Removal and Enforcement Operations made efforts to secure his removal to a country other than the Democratic Republic of Congo. (Amended Petition, [Docket No. 25], 6; Ross Declaration, [Docket No. 36], 2). In January 2016, the Office of Removal and Enforcement Operations submitted inquiries to Kenyan, Nigerian, and French embassies to ask whether those countries would accept Muzaliwa. (Ross Declaration, [Docket No. 36], 2). In February 2016, French and Kenyan officials responded to the inquiries, stating that those countries would not accept Muzaliwa. (Id.). In March, 2016, the Office of Removal and Enforcement Operations attempted to follow up on its initial inquiries to the Nigerian embassy but it was unable to reach anyone at the embassy. (Id.).

On April 11, 2016, Muzaliwa initiated the present action by filing his Petition for Writ of Habeas Corpus, [Docket No. 1], and Motion to Certify Class, [Docket No. 3].

On April 13, 2015, the Office of Removal and Enforcement Operations sent a request to the Tanzanian embassy to inquire whether that country would accept Muzaliwa. (Ross Declaration, [Docket No. 36], 3).

On April 13, 2016, Peter B. Berg, Deputy Field Office Director ("Deputy Director Berg") for the St. Paul ICE Field Office issued a decision to continue detention of Muzaliwa on the basis that Muzaliwa's previous criminal convictions indicated that Muzaliwa was a threat to the community.  (Pets.' Ex. 23, [Docket No. 44-1], 2).

On April 14, 2016, Muzaliwa's case was referred to ICE Headquarters Removal and International Operations in Washington D.C. for a determination whether there was a significant likelihood that Muzaliwa would be removed in the reasonably foreseeable future. (Id.).

On April 25, 2016, pursuant to a Release Notification and an Order of Supervision issued by ICE, Muzaliwa was released from post-removal order detention subject to conditions of release. (Resps.' Ex. 1A [Docket No. 36-1]; Resps.' Ex. 1B, [Docket No. 36-2]).

On April 26, 2016, pursuant to a stipulation of the parties that was approved by the Court, Muzaliwa filed an amended habeas petition and an amended motion for class certification in which Hienok Mengisteab Zere ("Zere") was added as a Petitioner. (See [Docket Nos. 23, 24, 25, 27]).

Zere, an Eritrean citizen who was born in Sudan, entered the United States as a refugee on January 27, 1993, when he was eleven months old. (Amended Petition, [Docket No. 25], 7; Declaration of Hienok Mengisteab Zere, [Docket No. 29-1], 48; Resps.' Ex. 2A, [Docket No. 37-1], 1 ). Zere became a lawful permanent resident of the United States of America on January 27, 1993. (Resps.' Ex. 2A, [Docket No. 37-1], 1).

On April 6, 2012, Zere was convicted of grand theft-receipt of stolen property, in violation of S.D. Codified Laws §§ 22-30A-7 and 22-30A-17. (Resps.' Ex. 2A, [Docket No. 37-1], 2).

On October 27, 2015, ICE charged Zere with removability pursuant to 8 U.S.C. § 1227 (a)(2)(A)(iii), for conviction of an aggravated felony, and ICE issued Zere a notice to appear. (See Resps.' Ex. 2A, [Docket No. 37-1], 2). Pursuant to 8 U.S.C. § 1226(c), Zere was held in custody pending the hearing on his removal. (Amended Petition, [Docket No. 25], 7).

On April 7, 2016, an IJ found that Zere was removable and she ordered Zere removed to any country other than Eritrea that would accept him. (April 7, 2016, IJ Order, [Docket No. 30-1], 18). The IJ denied Zere's applications for asylum and for withholding of removal. (Id.). However, the IJ granted Zere deferral of removal to Eritrea under Article III of the Convention Against Torture. (Id.).  Zere and ICE waived any appeal of the IJ's April 7, 2016, Order. (Id.). Under 8 C.F.R. § 1003.39, the parties' waivers of appeal rendered the IJ's April 7, 2016, Order administratively final.

Since the IJ issued the April 7, 2016, Order, Zere has been held in post-removal order detention. (Amended Petition, [Docket No. 25], 3). In April 2016, the Office of Removal and Enforcement Operations sent requests to the embassies of Kenya, Sudan, South Sudan, and Ethiopia to inquire whether any of those countries would accept Zere. (Robinson Declaration, [Docket No. 37], 3).  There is no indication in the present record whether officials from any of those countries have responded to the inquiries.

**II.    Petitioners' Motion for Certification of Classes, [Docket No. 3]; Amended Motion for Certification of Classes. [Docket No. 27].**

Petitioners move the Court, pursuant to Federal Rule of Civil Procedure 23(a) and Rule 23(b)(2), for an Order certifying a class as to the claims raised in their Amended Petition for Writ of Habeas Corpus, [Docket No. 25].[1]  (Amended Motion for Certification of Classes. [Docket No. 27]). Petitioners assert that their proposed class also meets the requirements for certification under Rule 23(b)(3). (Pets.' Memorandum in Support of Motion for Class Certification, [Docket No. 28] 17).

---

[1] Petitioners' filings in support of the motion to certify classes are ambiguous. In parts of the text of their motion, Petitioners state that they are asking the Court to certify multiple classes.  (See Amended Motion to Certify Classes. [Docket No. 27]). However, in other parts of the text of their motion and in their memorandum in support of their motion, Petitioners identify only a single proposed class. (See, gen., Id.; see also, gen., Pets.' Memorandum in Support of Motion for Class Certification, [Docket No. 28]). As the Petitioners' have identified only a single proposed class, the Court construes Petitioner's amended motion for certification of classes to be seeking the certification of only a single class.

### A. Standard of Review

Prior to considering whether a proposed class meets the statutory requirements, a court must determine whether the proposing party has satisfied the implicit requirements that: 1) a precisely defined class exists; and 2) that the proposed class representatives are members of the proposed class. Brown v. Wells Fargo & Co., 284 F.R.D. 432, 444 (D.Minn. 2012) (citing Irvin E. Schermer Trust v. Sun Equities Corp., 116 F.R.D. 332, 335 (D.Minn. 1987)). "Once the implicit requirements are satisfied, Rule 23 'establishes a two-step analysis to determine whether class certification is appropriate. First, plaintiffs must satisfy the four prerequisites of Federal Rule Civil Procedure 23(a). Second, the action must satisfy at least one of three subdivisions of Federal Rule Civil Procedure 23(b).'" Id. (quoting In re Retek Inc. Sec. Litig., 236 F.R.D. 431, 434 (D. Minn. 2006)).

Importantly, Petitioners "have the burden of establishing they have satisfied each of Rule 23's class certification requirements." Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 573 (D. Minn. 1995) (emphasis added) (citing General Telephone Co. v. Falcon, 457 U.S. 147, 161 (1982); Jenson v. Eveleth Taconite Co., 139 F.R.D. 657, 659 (D.Minn. 1991)); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). See also, Pipes v. Life Inv'rs Ins. Co. of Am., 254 F.R.D. 544, 552 (E.D. Ark. 2008) ("The prerequisites for certification of a class action are mandatory, and failure to establish just one bars class certification.").

In considering a motion for class certification under Rule 23, a court accepts the substantive allegations in the pleading as true. Lockwood Motors, 162 F.R.D. at 573 (D. Minn. 1995) (citing Jackson v. Rapps, 132 F.R.D. 226, 230 (W.D. Mo. 1990); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974)). Ultimately, the Court has broad discretion when deciding whether to certify a proposed class. Lockwood Motors, 162 F.R.D. at 573. (citations omitted).

**B. Analysis**

**1. <u>Implicit Factors</u>**

Petitioners must first establish the implicit requirements that a precisely defined class exists and that their proposed class representatives fall within that class. <u>See, e.g.</u>, <u>East Texas Motor Freight Sys., Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977); <u>Jenson</u>, 139 F.R.D. at 659; <u>In re Workers' Compensation</u>, 130 F.R.D. 99, 103 (D.Minn.1990).

To show that a precisely defined class exists, the party proposing the class for certification "must establish that the class, as proposed, is objectively ascertainable and a precise definition of the class must be given." <u>Brown</u>, 284 F.R.D. at 444 (quoting <u>Gardner v. Equifax Info. Servs., LLC</u>, No. 06–3102, 2007 WL 2261688, at *3 (D.Minn. Aug. 6, 2007)); <u>see also Chaffee v. Johnson</u>, 229 F.Supp. 445, 448 (S.D. Miss. 1964) ("The members of a class must be capable of definite identification as being either in or out of it."). Courts have found proposed classes to be sufficiently defined when membership in the class is easily determined on the basis of objective, readily ascertainable facts. <u>See, e.g.</u>, <u>In re Workers' Comp.</u>, 130 F.R.D. at 104 (proposed class was precisely defined where membership in class was based on easily determined fact of whether proposed class member purchased workers' compensation insurance); <u>White v. Nat'l Football League</u>, 822 F. Supp. 1389, 1403 (D. Minn. 1993) (proposed class adequately defined where membership was easily determined by comparing the name of the proposed class members to list of individuals under contract with, or eligible to play for, NFL teams); <u>c.f.</u> <u>Vietnam Veterans Against the War v. Benecke</u>, 63 F.R.D. 675, 680 (W.D. Mo. 1974) (proposed class not precisely defined where membership was based on proposed class members' subjective state of mind). A "Court should not be required to resort to speculation, or engage in

lengthy, individualized inquiries in order to identify class members." <u>In re Teflon Products Liab.</u>

<u>Litig.</u>, 254 F.R.D. 354, 361 (S.D. Iowa 2008) (internal citations omitted).

> Petitioners define their proposed class as:
>
> All individuals under the jurisdiction of the St. Paul ICE Field Office who are or will be subjected to detention in Minnesota under 8 U.S.C. § 1231 despite no significant likelihood of removal in the reasonably foreseeable future because they have an administratively final grant of withholding of removal under 8 U.S.C. § 1231(b)(3), withholding of removal under the Convention Against Torture, 8 C.F.R. § 1208.16, or deferral of removal under the Convention Against Torture, 8 C.F.R. § 1208.17 and they are not removable to any third country making their removal a practical impossibility.

Pets.' Amended Motion for Certification of Classes. [Docket No. 27]. Petitioners' proposed class

in the present case is <u>not</u> precisely defined.  Membership in the proposed class depends on a

significant individualized inquiry regarding a legal conclusion whether there is a significant

likelihood of the proposed class member's removal in the reasonably foreseeable future, which

itself requires a significant individual inquiry whether the proposed class member is removable

to a country other than the one to which they have been granted relief from removal.

In addition, Muzaliwa, who is no longer being detained, is not presently subject to

detention. As such, he does not presently fall within the proposed class. Nor is it at this time

easily determinable whether even Zere would fall within the proposed class because there is

evidence in the present record that ICE has made efforts to contact Sudan and other countries

seeking to remove Zere to those countries and there is no evidence that any of those countries

have refused to accept him.

Accordingly, Petitioners have failed to establish the implicit Rule 23 factors with regard

to their proposed class.

Nevertheless, the Court will also analyze whether Petitioners have established the

propriety of class certification under Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3). <u>See, e.g.</u>, <u>In re</u>

Teflon Products Liab. Litig., 254 F.R.D. at 371 (concluding that proposed class was not sufficiently defined but continuing on to analyze the explicit Rule 23 statutory factors).

## 2. **Explicit Statutory Factors**

### a. Rule 23(a) Factors

Rule 23(a) of the Federal Rules of Civil Procedure requires: (1) that the class be so numerous that joinder of all members is impracticable; (2) that there be questions of law common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and, (4) that the proposed representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### i. *Numerosity*

The first requirement of Rule 23(a) is that a plaintiff show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Satisfaction of the numerosity requirement does not require that joinder be impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required." Sanft v. Winnebago Indus., Inc., 214 F.R.D. 514, 520 (N.D. Iowa) (citing Arkansas Educ. Ass'n v. Board of Educ. of Portland, Arkansas School Dist., 446 F.2d 763, 765 (8th Cir. 1971)). The numerosity requirement imposes no absolute limitations and requires an "examination of the specific facts of each case[.]" General Tel. Co., 446 U.S. at 330. "Practicality of joinder depends on such factors as the size of the class, the ease of identifying its members and determining their addresses, the facility of making service on them if joined, their geographic dispersion and whether the size of the individual claims is so small as to inhibit individuals from separately pursuing their own claims." Glenn v. Daddy Rocks, Inc., 203 F.R.D. 425, 429 (D. Minn. 2001) (citing Paxton v. Union Nat'l Bank, 688 F.2d 552, 559–60 (8th Cir.1982), cert. denied, 460 U.S. 1083 (1983)).

In their memorandum, Petitioners <u>speculate</u> that there may be "dozens of non-citizens [that] fit into the potential class each year." (Pets.' Memorandum in Support of Motion for Certification, [Docket No. 28], 8). Notably, Defendants have submitted the sworn declaration of William J. Robinson, [Docket No. 33], a deportation officer who is responsible for overseeing the custody of aliens in removal proceedings and with final orders of removal. (<u>Id.</u> at 1). Robinson avers that the St. Paul Field Office is responsible for five states, including Minnesota, and that, at the time he made his declaration, there were four individuals in Minnesota who had been granted either withholding or deferral of removal under the Convention Against Torture. (<u>Id.</u>). Assuming solely for the sake of argument that Petitioners had sufficiently defined their proposed class, there is nothing in the present record to indicate whether any of those individuals would be within the proposed class as described as not being removable to a third country or there not being a significant likelihood of their removal in the reasonably foreseeable future. As such, the Court would be required to speculate as to even the general size of the proposed class. Such speculation is insufficient to establish the numerosity requirement. <u>See, e.g.,</u> <u>Irvin E. Schermer Trust</u>, 116 F.R.D. at 336 (citing <u>Delgado v. McTighe</u>, 91 F.R.D. 76, 78 (E.D. Pa. 1981)). Accordingly, the numerosity requirement has not been met in the present case.

    *ii.    Commonality*

Rule 23(a)(2) also requires that a plaintiff demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality, for the purposes of Rule 23 class certification, "requires that there be common questions of law or fact among the members of the class," but it "does not require that every question of law or fact be common to every member of the class." <u>Paxton</u>, 688 F.2d at 561.

In the present case, Petitioners identify three legal issues that they assert are common to the proposed class, namely whether the St. Paul Field Office's policy of detaining proposed class members during the ninety (90) day removal period violates 1) 8 U.S.C. § 1231; 2) the Fourth Amendment; and, 3) the Fifth Amendment. Again assuming solely for the sake of argument that Petitioners have sufficiently defined their proposed class, the legal issues identified by Petitioners are <u>not</u> common to everyone who would be within the proposed class. Petitioners' proposed class includes everyone detained by the St. Paul Field Office pursuant to 8 U.S.C. § 1231. Whereas Petitioners argue only that detention during the ninety (90) day removal period is unlawful, 8 U.S.C. § 1231 <u>also</u> authorizes discretionary detention <u>beyond</u> the ninety (90) day removal period under section 1231(a)(6) of certain inadmissible and removable aliens and criminal aliens upon a determination that the alien is a risk to the community or unlikely to comply with an order of removal. As such, Petitioners' three identified legal issues which focus on the legality of detention during the ninety (90) day removal period would not be common to any individuals within the proposed class, as described by Petitioners, who are presently subject to detention pursuant to 8 U.S.C. § 1231(a)(6). Accordingly, the commonality requirement has also not been met in the present case.

Because Petitioners have failed to establish either the numerosity or commonality factors of Rule 23(a), the Court need not address whether Petitioner's have met the other Rule 23(a) factors. <u>See, e.g.</u>, <u>Pipes</u>, 254 F.R.D. at 552 ("The prerequisites for certification of a class action are mandatory, and failure to establish just one bars class certification.").

### 3. Rule 23(b)(2).

Rule 23(b)(2), under which Petitioners seek to have their proposed class certified, allows a class action to be maintained "if the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

> With regard to class certification under Rule 23(b)(2), the Eighth Circuit has explained:

> "Class certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive." In re St. Jude Med., Inc., 425 F.3d 1116, 1121 (8th Cir.2005). Although Rule 23(b)(2) does not refer to the predominance of common questions, "class claims thereunder still must be cohesive." Id. Indeed, cohesiveness is even more important for a Rule 23(b)(2) class because, unlike Rule 23(b)(3), there is no provision for unnamed class members to opt out of the litigation. Id. Individuals comprising a Rule 23(b)(2) class are therefore "generally bound together through preexisting or continuing legal relationships or by some significant common trait such as race or gender." Id. at 1122 (quoting Holmes v. Cont'l Can Co., 706 F.2d 1144, 1155 n. 8 (11th Cir.1983)).

Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1035 (8th Cir. 2010).   The importance of cohesiveness to class certification under Rule 23(b)(2) is such that the Eighth Circuit has indicated that the existence of a significant number of individualized fact and legal issues is a proper reason to deny class certification under Rule 23(b)(2). See In re St. Jude Med., 425 F.3d at 1122 (rejecting certification of a medical monitoring class under Rule 23(b)(2) because it presented too many individualized factual and legal issues).

In the present case, Petitioners do seek declaratory and injunctive relief.  However, as discussed above, there are two important individualized determinations that must be made with respect to each proposed class member, namely whether each individual proposed class member is removable to a third country and whether there is a significant likelihood of removal of each individual proposed class member in that proposed class member's reasonably foreseeable future.  Given the significant nature of the individualized determinations with respect to Petitioner's proposed class, the Court concludes that Petitioners have not carried their burden to show that the proposed class is sufficiently cohesive that certification under Rule 23(b)(2) would be appropriate.

**4.  Rule 23(b)(3) Factor**s.

Petitioners nevertheless assert that they <u>also</u> meet the requirements set forth in Rule

23(b)(3). (<u>See</u> Pets.' Memorandum in Support of Motion, [Docket No. 28], 17).  Rule 23(b)(3)

allows a certified class to be maintained if "the court finds that the questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The matters pertinent to these findings

include: (A) the class members' interests in individually controlling the prosecution or defense of

separate actions; (B) the extent and nature of any litigation concerning the controversy already

begun by or against class members; (C) the desirability or undesirability of concentrating the

litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class

action." <u>Id.</u>

a.  <u>Predominance</u>

Rule 23(b)(3)'s predominance standard is more rigorous than Rule 23(a)(2)'s

commonality requirement.  <u>Amchem</u>, 521 U.S. at 614.  "Rule 23(b)(3) requires a showing that

questions common to the class predominate, not that those questions will be answered, on the

merits, in favor of the class." <u>Amgen Inc. v. Conn. Ret. Plans & Trust Funds</u>, 133 S.Ct. 1184,

1191 (2013)). "The predominance inquiry requires an analysis of whether a prima facie showing

of liability can be proved by common evidence or whether this showing varies from member to

member." <u>Halvorson v. Auto-Owners Ins. Co.</u>, 718 F.3d 773, 778 (8th Cir. 2013) (citing <u>Avritt</u>,

615 F.3d at 1029).

> There are no bright lines for determining whether common questions
> predominate. <u>In re Workers' Compensation</u>, 130 F.R.D. 99, 108 (D.Minn.1990);
> 7A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* §
> 1778 at 526 (2d ed. 1986 & Supp.1994). Instead, considering the facts of the case

presented, a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. <u>In re Workers' Compensation</u>, 130 F.R.D. at 108 (citing <u>In re Indus. Gas Antitrust Litig.</u>, 100 F.R.D. 280, 288 (N.D. Ill. 1983)).

<u>In re Potash Antitrust Litig.</u>, 159 F.R.D. 682, 693 (D. Minn. 1995).

It is common sense that a party cannot establish that common issues of law predominate over individualized questions of proposed class members where the party has failed to demonstrate that there are issues of law that are common to the entire proposed class. As such, in the present case, Petitioners' failure to meet the lower standard of the commonality requirement of Rule 23(a) <u>necessarily</u> means that they cannot meet the higher standard of the predominance requirement of rule 23(b)(3). <u>See</u> <u>Brown</u>, 279 F.R.D. at 497 ("As Plaintiffs have failed to demonstrate commonality of fact or law, they further fail to meet the more demanding burden under predominance"). As discussed in more detail below, Petitioners' theory that detention during the ninety (90) day removal period is unlawful as to each proposed class member depends on a showing that there is no significant likelihood that a proposed class member will be removed in the reasonably foreseeable future in part because the proposed class member cannot be removed to a country other than the proposed class member's country of origin. For each proposed class member, the showing of whether there is a significant likelihood or removal in the reasonably foreseeable future will necessarily depend on individualized factual evidence.

Based on the foregoing, Petitioners have not established the predominance requirement for certification under Rule 23(b)(3). Because Petitioners have failed to establish the predominance requirement for certification under Rule 23(b)(3) and cannot, therefore, establish that certification under Rule 23(b)(3) is appropriate, the Court does not address the other Rule

23(b)(3) factors associated with whether a class action is a superior method of adjudicating the present case. See, e.g., Pipes, 254 F.R.D. at 552 (failure to establish even a single prerequisite precludes class certification under Rule 23).

In summary, Petitioners have failed to establish either of the implicit factors required for class certification under Rule 23, and have further failed to establish a necessary factor for certification under each Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3). Accordingly, the Court recommends **DENYING** Plaintiff's Motion for Certification of Classes, [Docket No. 3]; and Amended Motion for Certification of Classes, [Docket No. 28].

## III.   AMENDED PETITION FOR WRIT OF HABEAS CORPUS. [Docket No. 25].

Because the undersigned recommends that Petitioners' motion for class certification be denied, the undersigned necessarily must analyze the Petitioners' claims solely with respect to the two named Petitioners, Muzaliwa and Zere. In their Amended  Petition for Writ of Habeas Corpus, [Docket No. 25], Petitioners alleged three claims challenging the legality of their detention during the ninety (90) day removal period, which is authorized by the text of 8 U.S.C. § 1231(a)(2).

### A.   Standard of Review

In pertinent part, 8 U.S.C. § 1231(a)(1)(A), establishes a ninety (90) day removal period for aliens who have been ordered removed. The removal period begins on the latest of (1) the day the removal order becomes administratively final; (2) the date of the order issued by a court that has reviewed the removal order, if that court has ordered a stay of removal; or (3) the date the alien is released from incarceration or confinement for other than the immigration process. 8 U.S.C. § 1231(a)(1)(B). The statute requires the Attorney General to detain aliens ordered removed during the nine (90) day removal period. 8 U.S.C. § 1231(a)(2). Following the ninety

(90) day removal period, the Attorney General may, as a matter of the Attorney General's discretion, detain an alien who has been ordered removed who is also inadmissible under 8 U.S.C. § 1182, removable under 8 U.S.C. §§ 1227(a)(1)(c), 1227(a)(2), or 1227(a)(4), or whom the Attorney General has determined to be a risk to the community or unlikely to comply with an order of removal. 8 U.S.C. § 1231(a)(6).

In Zadvydas v. Davis, 533 U.S. 678, 699-700 (2001), the United States Supreme Court held that 8 U.S.C. § 1231(a)(6) does not authorize the Attorney General to indefinitely detain aliens as a matter of the Attorney General's discretion, and the Supreme Court read an implicit limitation into that provision that, following the ninety (90) day removal period, the amount of time an alien who has been ordered removed may be held in post-removal order detention is to be subject to the period in which there is a significant likelihood of removal to another country in the reasonably foreseeable future. The Zadvydas Court established three pertinent time periods for determining whether removable is reasonably foreseeable: 1) the initial ninety (90) day removal period, during which detention is required; 2) between ninety (90) and one-hundred eighty (180) days, in which there is a presumption that removal is reasonably foreseeable and detention is authorized; and 3) beyond one-hundred-eighty (180) days, in which detention is presumptively unreasonable.  Id. at 700-01; see also Bah v. Cangemi, 489 F. Supp. 2d 905, 916 (D. Minn. 2007) (citing Zadvydas, 533 U.S. at 699).

**B.   Analysis**

1.   Rushinga Muzaliwa

In the present case, the Respondents state, and Petitioners have submitted nothing to dispute, that Muzaliwa is no longer being detained pending his removal.  Respondents argue that, as such, any challenges to the legality of Muzaliwa's detention are now moot.[2]

The release from detention of a detainee while that detainee's petition challenging the legality of that detention remains pending does <u>not</u> automatically cause the petition to become moot. <u>Sayonkon v. Beniecke</u>, No. CIV. 12-27 (MJD/JJK), 2012 WL 1621149, at *2 (D. Minn. Apr. 17, 2012) <u>report and recommendation adopted,</u> No. CIV. 12-27 (MJD/JJK), 2012 WL 1622545 (D. Minn. May 9, 2012) (citing <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998)). Rather, whether the petition becomes moot upon the petitioner's release depends on whether any of the potential exceptions to the mootness doctrine may apply. (<u>Id.</u>).

> Under these exceptions, the Petition should not be dismissed as moot if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit."

<u>Id.</u> (quoting <u>Riley v. I.N.S.</u>, 310 F.3d 1253, 1256 (10th Cir. 2002)).

Accordingly, it must be determined whether any of the potential exceptions to the mootness doctrine are applicable to the present case.

### i. _Secondary/Collateral Injury_

In order for the secondary/collateral injury exception to the mootness doctrine to apply so as to maintain the action in the absence of a live controversy over the legality of the detention, there must be "some concrete and continuing injury other than the now-ended incarceration" or "'collateral consequence' of the conviction" still at issue. <u>Spencer</u>, 523 U.S. at 7. Petitioners

---

[2] Respondents also assert that the Court should dismiss all of the named Respondents except Respondent Joel Brott, the Sherburne County Sheriff, as improper parties.  Respondents have not, however, brought a motion to dismiss the other Respondents.  In any event, because it is recommended that the Amended Petition be denied in its entirety, the undersigned does not address Respondent's argument that some of the Respondents should be dismissed.

have not identified any secondary or collateral injury that is still presently at issue. In addition, this exception does not apply to the conditions of release imposed upon Muzaliwa, which are the only collateral consequence apparent on the present record, as those conditions of release are actually collateral to the original uncontested order of removal rather than the allegedly unlawful detention. See Sayonkon, 2012 WL 1621149, at *2. Accordingly, the secondary/collateral injury exception to the mootness doctrine is inapplicable to the present case.

### ii.    *Capable of Repetition yet Evading Review*

The "capable of repetition, yet evading review" exception to the mootness doctrine is limited to circumstances in which: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (U.S. 1975). Muzaliwa's detention in the present case was ended before the present issue now before the Court could be fully litigated. However, there is no indication in the record that the second element of this exception is fulfilled with regard to the present case. There is nothing in the record that provides a reasonable basis to expect that ICE will again subject Muzaliwa to pre-removal detention. Sayonkon, 2012 WL 1621149, at *4. Rather, the Release Notification indicates that ICE actually intends that Petitioner remain on conditional release while ICE continues to seek his removal. Accordingly, the "capable of repetition, yet evading review" exception is similarly not applicable to the present case.

### iii.    *Free to Resume Illegal Practice Voluntarily Ceased*

The voluntary cessation of challenged conduct will render litigation moot only "if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." Nat'l Adver. Co. v. City of Miami, 402 F.3d 1329, 1333 (11th Cir.2005) (per curiam); Suarez–Tejeda

v. United States, 85 Fed. App'x. 711, 716 (10th Cir. 2004) (same). The Court's review of the record presently before it reveals nothing to raise a suspicion that ICE released Muzaliwa simply to deprive the Court of jurisdiction to consider the pending Amended Petition. Rather it appears that, at the end of the ninety (90) day removal period, Muzaliwa's case was reviewed to determine whether there was a significant likelihood of his removal in the reasonably foreseeable future during the discretionary detention period and a decision was made to release Muzaliwa while he awaited removal.  As it appears that the Respondents have not released Muzaliwa simply to deprive the Court of jurisdiction, the Court concludes that the third exception to the mootness doctrine is also inapplicable to the facts of the present case.

     *iv.*    *Class Action*

As discussed in more detail above, Petitioners have not established the necessary prerequisites for class certification in the present case. Accordingly, the final exception to the mootness doctrine is inapplicable to the present case as there is no certified class at issue and the Court must address the issues raised in the Amended Petition solely with respect to Muzaliwa and Zere.

In sum, Muzaliwa's release from detention subject to conditions while ICE continues to pursue his removal eliminated any live controversy over the legality of Muzaliwa's prior post removal Order detention. As none of the exceptions to the mootness doctrine applies, the undersigned recommends **DENYING** the Amended Petition for Writ of Habeas Corpus, [Docket No. 25], as moot as to Muzaliwa.

Because the undersigned recommends that the Amended Petition be denied as moot as to Muzaliwa, the undersigned also recommends that this action be dismissed as to Muzaliwa without prejudice. See Ali v. Cangemi, 419 F.3d 722, 723-24 (8th Cir. 2005) (en banc)

(remanding case involving a detainee who was released while his petition for writ of habeas corpus was pending, which the Court of Appeals deemed moot, to the district court with instructions to dismiss the petition without prejudice).

   2.   Hienok Zere

Petitioners urge the Court to construe 8 U.S.C. § 1231(a)(2), which requires mandatory detention during the ninety (90) day removal period, to include the same implicit limitation that the Supreme Court read into 8 U.S.C. § 1231(a)(6) in Zadvydas, *i.e.*, that detention is authorized only as to the period in which there is a significant likelihood of removal in the reasonably foreseeable future.  Petitioners assert that, when the 8 U.S.C. § 1231(a)(2) is so construed, Zere's detention during the ninety (90) day removal period violates: 1) 8 U.S.C. § 1231; 2) the Fourth Amendment as an unreasonable seizure; and, 3) the Fifth Amendment as arbitrary detention.

There are a number of reasons why this Court cannot read into 8 U.S.C. § 1231(a)(2) the same implicit limitation that the Supreme Court read into 8 U.S.C. § 1231(a)(6) in Zadvyadas. As a threshold matter, in reading that implicit limitation into 8 U.S.C. § 1231(a)(6), the Zadvydas court reasoned that U.S.C. § 1231(a)(6) raised serious constitutionality concerns because the text of the provision, as drafted, allowed for indefinite detention. Zadvydas, 533 U.S. at 690. As such, to avoid that potential constitutional infirmity, the Zadvydas court concluded that discretionary detention pursuant to 8 U.S.C. § 1231(a)(6) must be limited to the time reasonably necessary to serve the purposes of the provision. Zadvydas, 533 U.S. at 690. The Zadvydas court interpreted 8 U.S.C. § 1231(a)(6) accordingly as including the implicit limitation that discretionary post-removal period detention pursuant to 8 U.S.C. § 1231(a)(6) is authorized only during the period in which removal was significantly likely in the reasonably foreseeable future.  Zadvydas, 533 U.S. at 690. There is no such threat of indefinite detention during the ninety (90) day removal

period under 8 U.S.C. § 1231(a)(2).  In fact, the <u>Zadvydas</u> court expressly contrasted the definite nature of mandatory removal period detention pursuant to 8 U.S.C. § 1231(a)(2) with the indefinite nature of discretionary post-removal period detention pursuant to 8 U.S.C. § 1231(a)(6). <u>See</u> <u>Zadvydas</u>, 533 U.S. at 697 ("[M]ore importantly, post-removal-period detention, <u>unlike detention pending a determination of removability or during the subsequent 90–day removal period</u>, has no obvious termination point.") (emphasis added).

In addition, the <u>Zadvydas</u> court indicated that, notwithstanding the potential constitutionality problem raised by the text of 8 U.S.C. § 1231(a)(6), as drafted, the court would have been bound to give 8 U.S.C. § 1231(a)(6) the plain meaning of the statute's text if Congress had made clear an intent to authorize indefinite discretionary post-removal period detention. <u>Zadvydas</u>, 533 U.S. at 696 (quoting <u>Miller v. French</u>, 530 U.S. 327, 336 (2000)). In concluding that Congress had not made clear an intent to authorize indefinite detention under 8 U.S.C. § 1231(a)(6), the <u>Zadvydas</u> court observed that Congress had expressly set a limit on mandatory detention during the removal period to a period of ninety (90) days by reducing it from the previous mandatory detention period of one-hundred-eighty (180) days. <u>Zadvydas</u>, 533 U.S. at 698. As such, the lack of clear congressional intent that allowed the <u>Zadvydas</u> court to interpret 8 U.S.C. § 1231(a)(6) to avoid a potential unconstitutional infirmity is <u>not</u> present with respect to 8 U.S.C. § 1231(a)(2).  This Court is required to interpret 8 U.S.C. § 1231(a)(2) according to the plain meaning of the text of the statute, which evidences Congress' intent that detention during the removal period be mandatory.  <u>See</u> <u>Zadvydas</u>, 533 U.S. at 696 (quoting <u>Miller</u>, 530 U.S. at 336). Even in <u>Zadvydas</u>, the Supreme Court stated that "[a]fter entry of a final removal order and during the 90–day removal period, . . . aliens <u>must</u> be held in custody." <u>Zadvydas</u>, 533 U.S. at

683 (emphasis added) (citing 8 U.S.C. § 1231(a)(2)); see also Khotesouvan v. Morones, 386 F.3d 1298, 1300 (9th Cir. 2004)).

 Petitioners nevertheless assert that Zadvydas and its progeny do not establish a rule that post-removal order detention within one-hundred-eighty (180) days following a removal order will always be valid, but rather that a court must determine the validity of a particular instance of post-removal detention with respect to a particular instance of detention by asking whether the detention would serve the purpose of removal. Petitioners misconstrue Zadvydas and its progeny. As indicated in Section III.A., above, the United States Surpeme Court in Zadvydas indicated that detention during the ninety (90) day removal period is mandatory and that discretionary post-removal period detention is presumptively reasonable for an additional ninety (90) days, following which the discretionary post-removal period detention becomes presumptively unreasonable. Zadvydas, 533 U.S. at 701.[3]  It is not for this Court to extend the limitation that the Supreme Court read only into 8 U.S.C. § 1231(a)(6), which governs discretionary post-removal order detention, to also apply to 8 U.S.C. § 1231(a)(2), which sets a definite period of mandatory detention.

 Finally, even assuming solely for the sake of argument that this Court could read into 8 U.S.C. § 1231(a)(2) the limitation that mandatory detention be limited to the period in which removal of the alien is significantly likely in the reasonable foreseeably future, which it cannot, Zere has not at this time established that his removal to a country other than Eritrea is not

---

[3] Under Zadvydas, after a petitioner has been in post-removal detention for 180 days or more,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

Zadvydas, 533 U.S. at 701.

significantly likely in the reasonably foreseeable future.[4]   The Respondents have submitted evidence that the Office of Removal and Enforcement Operations has contacted the embassies of Kenya, Sudan, South Sudan, and Ethiopia seeking Zere's removal and there is no evidence in the present record that officials from any of those countries have refused to accept Zere.

Based on all of the foregoing, the Court recommends **DENYING** the Amended Petition to the extent that it pertains to Zere.

## IV.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. That Petitioners' Motion for Certification of Classes, [Docket No. 3], be **DENIED**, as discussed above;

2. That Petitioners' Amended Motion for Certification of Classes, [Docket No. 27], be **DENIED**, as discussed above;

3. That the Amended Petition for a Writ of Habeas Corpus, [Docket No. 25], be **DENIED as moot**, to the extent that it pertains to Rushinga Muzaliwa; and,

4. That the Amended Petition for a Writ of Habeas Corpus, [Docket No. 25], be **DENIED**, to the extent it pertains to Hienok Zere, as discussed above.

Dated: June 10, 2016                                         s/Leo I. Brisbois
                                                            Leo I. Brisbois
                                                            U.S. MAGISTRATE JUDGE

---

[4] As Zere is <u>currently</u> challenging his detention pursuant to 8 U.S.C. § 1231(a)(2), and would not as of the date of this report and recommendation have standing to challenge the legal validity of any post-removal period detention pursuant to 8 U.S.C. § 1231(a)(6), the recommended findings and conclusions contained in this report and recommendation are necessarily limited to Zere's challenge to his current detention.  It is not at this time apparent whether Zere would be subject to discretionary post-removal period detention pursuant to 8 U.S.C. § 1231(a)(6) and the recommended findings and conclusions contained in the present report and recommendation are without prejudice as to any arguments that Zere may make as to the legality of any such post-removal period detention, pursuant to 8 U.S.C. § 1231(a)(6).

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.